J-S34008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: T.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.A., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 475 MDA 2020 |

Appeal from the Decree Entered February 21, 2020
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s): 2-AD-2020

| | | |
|---|---|---|
| IN THE INT. OF: T.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.A., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 476 MDA 2020 |

Appeal from the Decree Entered February 21, 2020
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s): 3-AD-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:                    **FILED AUGUST 24, 2020**

In these consolidated appeals, T.A. ("Mother") appeals from the order and decree entered February 20, 2020, in the Dauphin Court of Common Pleas. The order changed the permanent placement goal of her children ("Children"), T.B. ("Son"), born in September of 2004 and T.A. ("Daughter"), born in August of 2012, from reunification to adoption. A decree entered the

same day involuntarily terminated her parental rights to her children.[1] In addition, Mother's counsel has filed a petition to withdraw and brief in accordance with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's petition to withdraw and affirm both the order and the decree.

The parties are well aware of the facts and procedural history underlying this appeal, which the trial court details in its opinion. **See** Trial Court Opinion, 4/03/20, at 1-5. Accordingly, we need not reiterate them at length herein. In summary, Mother was involved with Delaware County Children and Youth Services ("CYS") from 2012-2017. In August 2017, Dauphin County CYS became involved after receiving reports of conflicts between Mother and her oldest child,[2] and Mother's use of Phencyclidine ("PCP"). On August 23, 2017, following a hearing, the trial court adjudicated the Children dependent.

Son resides in a stable foster home, while Daughter lives in a preadoptive foster home. When CYS initially placed the Children in foster care, the goal was to return to their parent(s). On January 29, 2020, CYS filed a petition for goal change to adoption and a petition to terminate involuntarily Moher and Fathers' parental rights. Following a February 20,

---

[1] The Children's fathers, K.B. to Son, and Unknown Father and K.R. to Daughter have not been involved in these proceedings. The trial court involuntary terminated their rights the same day and they have not appealed.

[2] This child is over age eighteen and is not involved in these proceedings.

2020 hearing, at which counsel represented Mother and Mother participated, the trial court entered an order changing the Children's permanency goal to adoption, and a decree involuntarily terminating Mother's parental rights. Mother filed timely notices of appeal from both the order and decree on March 9, 2020, accompanied by a statement of intent to file an *Anders* brief.[3] *See* Pa.R.A.P. 1925(c)(4). On May 20, 2020, Mother's counsel filed an *Anders* brief in this Court.[4]

We begin by addressing counsel's request to withdraw and *Anders* brief. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quotation omitted). This Court extended the *Anders* procedure to appeals from decrees terminating parental rights involuntarily in *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), and to appeals from goal change orders in *In re J.D.H.*, 171 A.3d 903 (Pa. Super. 2017).

To withdraw pursuant to *Anders*, counsel must comply with the following requirements:

---

[3] We note Mother properly filed separate notices of appeal for each docket. *See Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018).

[4] On May 22, 2020, this Court directed counsel to file a proper petition to withdraw and serve it upon Mother. On May 25, 2020, counsel complied. On June 9 and 18, 2020, this Court received letters from both Children's guardian *ad litems* stating they would not be filing briefs in this matter. Dauphin County CYS has also failed to file a brief.

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights. *See Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for *Anders* briefs:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d, at 361.

In the instant matter, counsel filed a petition to withdraw and *Anders* brief stating she conducted a review of the record and determined Mother's appeal is "wholly frivolous." Application for Leave to Withdraw, 5/25/20, at 3. The *Anders* brief includes a summary of the facts and procedural history of this case, the issue that could arguably support the appeal, and counsel's

- 4 -

assessment of why the issue is frivolous, with citations to the record and relevant legal authority. Counsel also provided this Court with a copy of her letter to Mother, advising her of her right to obtain new counsel or proceed *pro se*.[5] Moreover, we note Mother has not filed a response to counsel's petition. Therefore, we find counsel has complied with the requirements of **Anders** and **Santiago**, and we may proceed to review the issue outlined in her brief. Additionally, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief presents the following issue for our review: whether the trial court abused its discretion or committed an error of law by determining it was in the Children's best interest to terminate Mother's parental rights.[6] **See Anders** Brief, at 7.

Mother contends the trial court abused its discretion in involuntarily terminating her parental rights. **See Anders** Brief, at 7. We apply the

---

[5] Counsel indicated in her letter that she had enclosed a copy of the **Anders** brief.

[6] Mother does not challenge the change of the permanency goal from reunification from adoption. **See Anders** Brief, at 6-7. Our independent review of the record does not demonstrate any nonfrivolous issues with respect to the trial court's determination; we therefore will not address it further.

following standard of review when considering the propriety of a termination

decree:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

Section 2511 of the Adoption Act governs the involuntary termination of

parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the juvenile court terminated Mother's parental

rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only

agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.
>
> * * *

23 Pa.C.S.A. § 2511(a)(2), (b).

Mother contends the court abused its discretion in terminating her rights under Subsection 2511(a)(2) because "she did everything she could to be reunited with her children." **Anders** Brief, at 17. We disagree.

Considering first the grounds for termination under subsection 2511(a)(2), we note:

> . . . . In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

**In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." **In re A.L.D.**, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

The trial court summarized the evidence supporting its decree as follows:

> [CYS] established service objectives. Mother's service objectives, and her level of compliance, are as follows:
>
> 1. Submit to 3 drug screens per week at [CYS].
>
>> Over the life of the case, Mother was required to submit to 354 urine screens. Mother submitted to only 17, all of which tested positive. Mother's last test, on August 29, 2019, was positive for PCP.

- 8 -

Mother is presumed to have tested positive on the times she failed to appear; therefore, all 354 tests were positive.

Mother stated that she failed to appear for drug testing because she lacked transportation, although [CYS] made transportation available to her through STOPP, (Short-Term Therapeutic Outreach to Prevent Placement). STOPP provides transportation for urine screens. Mother was discharged from STOPP as unsuccessful. Although Mother submitted to some drug screens at the YWCA, those screens did not test for PCP [Mother's drug of choice].

2. Submit to a drug and alcohol evaluation.

Mother obtained a drug and alcohol evaluation and received the recommendation that she undergo drug and alcohol treatment at NASR Consultant Group, a drug rehabilitation facility. Mother did not complete this objective. Mother states that she has received outpatient drug and alcohol treatment but offered no supporting evidence.[7]

3. Obtain a psychological evaluation and follow all recommendations.

Mother obtained a psychological evaluation but did not follow through with the recommendations. The examiner, Howard Rosen, Ph.D., recommended that Mother continue with drug and alcohol treatment, undergo outpatient therapy, continue with psychiatric medication management, seek evaluation, management and intervention for chronic pain, and complete the Strengthening Families parenting program. Mother did not follow through with any of the recommendations.

---

[7] While Mother claimed the same counselor treated her for several years for both her drug and mental health issues, she did not know her last name, provided no records, did not ask the counselor to appear at the hearing, and did not know her credentials.

3.    Cooperate and comply with [CYS] objectives.

Mother failed to maintain contact with [CYS]. In October and December of 2018, [CYS] required Mother's authorization for medical management for [Son]. [CYS] was unable to locate Mother to obtain authorization, necessitating the filing of motions for authorization with the [trial court]. In April 2018. [CYS] filed a motion for medical authorization for mental health services regarding [Daughter].

Mother did not timely notify [CYS] of a change in address.

Mother failed to cooperate with efforts toward reunification. [CYS] offered visits with Mother and [the Children] at the YWCA. However, the YWCA discharged Mother from the program due to lack of attendance. Mother frequently arrived late, after [the Children] left. There were some occasions on which [the Children] did not appear for visits. Following discharge from the visitation program at the YWCA, [CYS] offered Mother visitation at [their building]. [Son] did not attend consistently, as he did not wish to visit with Mother. At some visits, Mother's yelling and cursing . . . required intervention.

Frequently, [CYS] could not reach Mother to advise of school appointments.

Mother did not sign necessary releases for participation in the parenting program. Strengthening Families.

Mother believes she complied with everything [CYS] has asked of her.[8]

---

[8] Mother's testimony on this point was somewhat less than clear. Based upon the context in which this statement occurred, and her later testimony on cross-examination, it appears she was referring to a previous occasion when her Children were in care with Delaware County CYS, who later returned them to her, not the present instance. N.T. Termination Hearing, 2/20/20, at 61, 63, 69-70.

5. Obtain and maintain appropriate and stable housing.

Mother's one-bedroom apartment has insufficient room for [the Children].

6. Participate in and successfully complete a parenting program.

Mother enrolled in, but did not complete, the Samara Intensive Parenting Program. Mother attended only 9 out of 19 classes.

7. Participate in therapeutic counseling with [the Children to address trauma associated with [their] placement.

Mother failed to participate in counseling.

8. Attend all Court hearings, meetings and treatment plan meetings.

Mother attended 9 out of 10 court hearings. Mother did not attend medication management appointments.

Both Children have been in care since August 23, 2017.

Trial Court Opinion, 4/03/20, at 2-4 (record citations omitted).

Our review of the record reveals ample support for the court's findings. Indeed, the Children's case manager testified Mother has made no progress towards her objectives. *See* N.T. Termination Hearing, 2/20/2020, at 16. Mother only participated in 17 out of 354 drugs screenings and failed all 17. *See id.*, at 18. Mother did not comply with the recommended drug and alcohol treatment. *See id.*, at 19. Mother did not sign releases. *See id.*, at 20, 22, 29.

At various times, CYS has been unable to locate Mother, necessitating further court proceedings in order for the Children to get needed medical treatment. *See id.*, at 22-24.

Mother has not completed a parenting program. *See id.*, at 25-26, 28. Mother has not complied with the recommendations made by Dr. Rosen after her psychological evaluation. *See id.*, at 26-28. Mother's attendance at visits has been, at best, sporadic; she failed to appear for a visit scheduled just one week prior to the termination hearing. *Id.* at 33-34.

Accordingly, we can find no error with the trial court's determination CYS presented clear and convincing evidence of Mother's "repeated and continued incapacity" to care for the Children. *M.E.P.*, 825 A.2d, at 1272. This caused the Children to be "without essential parental care, control or subsistence necessary" for their well-being, and the cause of Mother's incapacity, *i.e.*, her drug use, mental health problems, and refusal to cooperate with service providers, "cannot or will not be remedied." *Id.*

As we have found the evidence supported the involuntary termination of Mother's parental rights under Subsection 2511(a)(2), we next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any,

between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotations and some punctuation omitted).

In concluding CYS presented clear and convincing evidence under Subsection 2511(b), the trial court opined:

We find that the developmental, physical and emotional needs and welfare of [the Children] are best served by termination of Mother's parental rights.

* * *

Termination of Mother's parental rights provides [the Children] with the opportunity for permanency.

* * *

Here, the record is devoid of evidence of a bond between Mother and [the Children]. To the contrary, [Son] chooses not to visit with Mother. Mother offered no testimony as to her relationship with [Daughter].

Both foster homes provide stable and loving care. [Son's] foster family has ensured that his medical, psychological and educational needs are met. [Daughter] has bonded well with her pre-adoptive foster mother. We will not subordinate their best interests and

the stability they enjoy to the hope that Mother can someday overcome her obstacles.

Trial Court Opinion, 4/03/20, at 8-9.

Again, we find no abuse of discretion on the part of the trial court. The evidence demonstrated Son has no interest in having contact with Mother, and both Children expressed the wish, through their guardian *ad litems*, to be adopted. ***See*** N.T. Termination Hearing, 2/20/2020, at 6. Mother had made minimal efforts to foster a relationship with the Children. ***See id.***, at 33-34, 46-47, 53-54, 57-58. Further, both Children are in stable foster homes, and Daughter's foster mother wants to adopt her. ***Id.*** at 14-16. Accordingly, Mother is entitled to no relief on her challenge to the court's involuntary termination of her parental rights.

Therefore, because our review of Mother's claims demonstrates they do not entitle her to relief, and because our independent review of the record does not reveal any non-frivolous issues overlooked by counsel, we grant counsel's petition to withdraw and affirm both the order and decree entered on February 20, 2020.

Order affirmed. Decree affirmed. Application to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/24/2020</u>