J-S54015-17

2017 PA Super 313

| | | |
|---|---|---|
| IN RE: J.D.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S.H., NATURAL | : | |
| MOTHER | : | No. 374 WDA 2017 |

Appeal from the Order January 30, 2017
In the Court of Common Pleas of Jefferson County
Orphans' Court at No(s):  CP-33-DP-030-2016

BEFORE:   OTT, MOULTON, and FITZGERALD[*], JJ.

OPINION BY OTT, J.:                                 **FILED OCTOBER 2, 2017**

A.S.H. ("Mother") appeals from the order entered January 30, 2017, in the Court of Common Pleas of Jefferson County, which changed the permanency goal of her minor son, J.D.H. ("Child"), to adoption. Additionally, Mother's counsel has filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  Upon review, we grant counsel's petition to withdraw and affirm the goal change order.[1]

The record reveals that Jefferson County Children and Youth Services ("CYS") filed an application for emergency protective custody of Child

---

[*] Former Justice specially assigned to the Superior Court.

[1] Child's putative father, B.M., did not file a brief in connection with this appeal, nor did he file his own separate appeal.

several days after his birth in June 2016. In its application, CYS averred that it received a report from Penn Highlands Hospital, alleging that Mother suffers from mental health issues, and lacks the ability to care for Child. Application for Emergency Protective Custody at 3. CYS further averred that Mother acknowledged a history of depression and bipolar disorder, that she was not taking her mental health medications, and that she reported hitting others when angry or upset. *Id.* The trial court entered an order for emergency protective custody that same day, and placed Child in foster care. Child remained in foster care pursuant to a shelter care order entered later that month, and the court adjudicated Child dependent by order entered August 1, 2016.

Following Child's adjudication of dependency, the trial court conducted permanency review hearings on October 26, 2016, and January 25, 2017. On January 30, 2017, the court entered a permanency review order changing Child's permanency goal from reunification to adoption. Mother timely filed a notice of appeal on March 1, 2017, along with a concise statement of errors complained of on appeal. On June 6, 2017, Mother's counsel filed a petition to withdraw and *Anders* brief in this Court.

Before reaching the merits of Mother's appeal, we must first address the propriety of counsel's petition to withdraw and *Anders* brief. The *Anders* procedure, whereby court-appointed counsel may seek to withdraw if he or she concludes that an appeal is wholly frivolous, initially applied to direct appeals in criminal matters. In *In re V.E.*, 611 A.2d 1267 (Pa. Super.

1992), this Court extended the **Anders** procedure to appeals from decrees involuntarily terminating parental rights. Since then, we have routinely applied the **Anders** procedure to appeals from goal change orders, so long as the appellant also is appealing from an involuntary termination decree.

Here, Mother is appealing only from an order changing Child's permanency goal to adoption, as there is no order terminating her parental rights. Further, our review of the record does not reveal that CYS has filed a petition requesting that Mother's parental rights be terminated. Moreover, our research has uncovered no published decision by this Court, or by our Supreme Court, applying the **Anders** procedure to an appeal from a goal change order only, with no accompanying involuntary termination.

After careful consideration, we conclude that the **Anders** procedure should also apply in appeals from goal change orders, even in the absence of an involuntary termination decree. Parents have a right to counsel at every stage of a dependency proceeding. Section 6337 of the Juvenile Act, 42 Pa.C.S.A. § 6337 provides that "a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him."[2]

_____

[2] Section 2313(a.1) of the Adoption Act governs the appointment of counsel for parents in involuntary termination proceedings. **See** 23 Pa.C.S.A. § 2313(a.1) ("The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, upon
*(Footnote Continued Next Page)*

Furthermore, court-appointed counsel can be placed in the same position as a criminal defense attorney. A parent may direct counsel to file an appeal from a goal change order, even if counsel advises him or her that any such appeal would be frivolous. Similarly, counsel may file an appeal believing it to be meritorious, only to discover its frivolousness later. In either scenario, counsel cannot pursue what he or she believes is a frivolous appeal without violating the Rules of Professional Conduct. ***See specifically*** Pa.R.P.C. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous[.]"). The ***Anders*** procedure provides a solution to this problem, by ensuring that parents receive the benefit of a counseled appeal, while also allowing counsel to act in accordance with the Rules. ***See Commonwealth v. Donaghy***, 33 A.3d 12, 17 (Pa. Super. 2011), *reargument denied* (Oct. 14, 2011), *appeal denied*, 40 A.3d 120 (Pa. 2012) (quoting ***Commonwealth v. McClendon***, 434 A.2d 1185, 1187 (Pa. 1987)) (explaining that the ***Anders*** procedure provides counsel "with a mechanism whereby he can satisfy his client's desire for a direct appeal without having to 'compromise principle or to act contrary to his own conscience.'").

However, allowing counsel to withdraw prior to the entry of an involuntary termination decree presents certain complications unique to

_(Footnote Continued)_ ———————————

petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship.").

dependency and adoption proceedings. As discussed above, parents have a right to counsel at every stage of a dependency proceeding, and dependency proceedings do not end merely because a trial court enters a goal change order. Thus, if we permit counsel to withdraw in this case, Mother still would be entitled to counsel pursuant to Section 6337. If Mother could not afford counsel, the trial court would need to appoint new counsel for her in any subsequent proceedings.

We believe that the most prudent way to address this issue is to require that any court-appointed counsel who wishes to withdraw under these circumstances must inform the parent of his or her right to counsel in any subsequent dependency or involuntary termination proceedings. Counsel must also inform the parent that, if he or she cannot afford counsel, he or she may contact the trial court in order to obtain new counsel. This information must be conveyed to the parent at the same time that counsel informs the parent of his or her other rights pursuant to **Anders**, as discussed below.

Accordingly, we may now proceed to consider whether Mother's counsel complied with the requirements of **Anders**. To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel

or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of ***Anders***, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Here, counsel complied with the first two ***Anders*** requirements by filing a petition to withdraw, certifying that he has reviewed the case and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, a potential issue that could be raised by Mother, and counsel's assessment of why that

issue is meritless, with citations to the record and to relevant legal authority. Counsel attached a copy of a letter to Mother to his petition to withdraw, indicating that he enclosed a copy of the brief.

With respect to the third **Anders** requirement, counsel's letter to Mother also informed her of her right to hire a private attorney, to proceed on her own, or to raise any additional points she deems worthy of this Court's attention. However, counsel's letter stated incorrectly that Mother would need to wait until this Court rules on his petition to withdraw before exercising those rights. **See** Letter, 6/5/2017 (explaining that Mother may exercise her rights "if the Superior Court allows me to withdraw"). As a result, this Court issued a *per curiam* order on August 22, 2017, instructing counsel that he must provide Mother with a new letter advising her of her rights, and clarifying that she must exercise those rights now, before this Court rules on his petition to withdraw. In addition, for the reasons discussed above, we instructed that counsel must inform Mother that she has the right to counsel in any subsequent dependency or involuntary termination of parental rights proceedings, and that, if she cannot afford private counsel, she may contact the trial court in order to have new counsel appointed for her.

Counsel complied with our order by filing a copy of a new letter to Mother in this Court on September 1, 2017. In his new letter, counsel advised Mother correctly that she has the right to hire a private attorney, to

proceed on her own, or to raise any additional points she deems worthy of this Court's attention now, and that she cannot wait until this Court rules on counsel's petition to withdraw. In addition, counsel advised Mother that she has the right to counsel in any future dependency or termination of parental rights proceedings. Counsel informed Mother that, since she cannot afford counsel, she should contact the court administrator in order to have counsel appointed for her. Thus, counsel now has complied with the requirements of **Anders** and **Santiago**. We therefore may proceed to review the issue outlined in counsel's **Anders** brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief raises the following issue for our review. "Whether the [trial] court erred in changing the permanency placement goal to adoption[?]" **Anders** brief at 4.

We address this issue mindful of the following.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

**In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement;

(2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, Mother argues that the trial court abused its discretion by changing Child's permanency goal to adoption after only seven months. *Anders* brief at 8. According to Mother, the Juvenile Act envisions that a child should be placed in foster care for fifteen of the last twenty-two months before his or her goal is changed. *Id.*

The trial court explained its decision to change Child's permanency goal to adoption as follows.

In her Statement of Matters Complained of on Appeal, Mother alleges that the Court erred in changing the permanency goal to adoption since the child had not been in placement for 15 of the preceding 22 months. She thereby assumes a legislative intent not supported by the plain language of the relevant statute.

\*\*\*

That is but one of the matters to be determined at a permanency hearing, and contrary to Mother's implicit assumption, it is a consideration designed to protect the child, not the parent. More specifically, it is designed to ensure that children will not

languish in foster care indefinitely, not to guarantee parents a minimum of 15 months to achieve an acceptable level of parental capacity.

The idea that a court must always wait until a child has been in placement for 15 of 22 months before changing his permanency goal to adoption is, in fact, antagonistic to the Juvenile Act's overall purpose of protecting children's best interests and the appellate courts' repeated directive that a child's safety, permanency, and well-being must take precedence over *all* other considerations. What must be undertaken, then, is a case-by-case, hearing-by-hearing, and child-by-child analysis of the relevant circumstances, and in this case, the circumstances were such that the Court deemed a goal change to be in the child's best interests.

As the record reflects, CYS took custody of the child when he was only a month old, and six months later, Mother was no more capable of parenting him than she had been at the outset. By January 25, 2017, in fact, she was showing signs of regression. This was not a case where the parent was close to meeting her goals and then had a setback, though. Rather, Mother's parenting skills did not approach satisfactory in the first place, and her increased deficiencies posed a very real threat to the child's safety and well-being. To put it bluntly, the child would probably be dead were it not for the fact that Mother was not given the opportunity to interact with him absent a supervisor. Given Mother's cognitive challenges and the limited progress she made even with the services provided, moreover, the Court did not believe she could acquire and retain adequate parenting skills within any reasonable timeframe, especially in light of the fact that the child would only become more difficult and demanding as he grew.

In the best interests of the Child, then, the Court changed the goal to adoption, thereby affording him the opportunity to become a permanent part of a family that is willing and able to love him and meet his needs.

Trial Court Opinion, 4/20/2017, at 1-2 (citations omitted).

We agree with the trial court's well-reasoned analysis. As this Court

has explained, the fifteen-to-twenty-two-month timeframe set forth in the

- 10 -

Juvenile Act is not prerequisite to a goal change, but rather is "an aspirational target in which to attain permanency." *In the Interest of L.T.*, 158 A.3d 1266, 1279 (Pa. Super. 2017) (citing 42 Pa.C.S.A. § 6351(f.1)(9)). While trial courts should not rush to change a child's permanency goal to adoption in circumstances where a parent is making progress toward reunification, neither should courts persist in attempting to reunite a family when further reunification efforts would be futile and/or contrary to a child's best interest.

In this case, the record amply supports the trial court's conclusion that Mother will not attain the skills necessary to parent Child within a reasonable period of time, and that requiring further reunification efforts would only serve to delay permanency for Child. During the goal change hearing, CYS caseworker, Krista Geelen, testified that Mother's parenting abilities have been "significantly regressing" since Child entered foster care. N.T., 1/25/2017, at 5. Mother struggles to perform basic tasks, such as feeding Child and changing his diaper. *Id.* at 5-7, 10, 12. Mother also is unable to ensure Child's safety while he is in her care. Ms. Geelen recalled speaking with one of Mother's service providers, who detailed these concerns.

> [The service provider] also stated that during the meeting -- a meeting at [the foster mother's] home, [Mother] had actually unbuckled [Child] from his seat and kind of walked away. He was sitting up on a coffee table. So she didn't get him out of it. She walked away, and [the service provider] had to step in to make sure that he didn't fall out of the seat. She had said that she observed him hitting his head on the floor numerous times. She had observed that when they were trying to bathe [Child],

- 11 -

[Child's] head was almost going under the water, and [the service provider] had to step in because [Mother] didn't think to make sure he wasn't going under the water.

*Id.* at 10-11.

In addition, while Mother had been compliant with service providers in the past, she recently has become noncompliant by missing several appointments. *Id.* at 7. Specifically, Ms. Geelen testified that Mother has difficulty canceling and rescheduling appointments. *Id.* Mother "will no-show a lot of appointments. . . . She'll say that she's canceling, but she'll forget to actually cancel." *Id.* at 7-8.

Finally, Ms. Geelen testified that Child is bonding well with his foster parents. *Id.* at 4. Child's foster parents meet all of his needs, and he is thriving in their care. *Id.* She explained, "He's growing and developing wonderfully. He is trying to crawl. He's Dada, Dada now all the time. . . . He's doing great there." *Id.*

Thus, we conclude that the trial court did not abuse its discretion by changing Child's permanency goal to adoption. The record confirms that Mother has made no progress since Child entered foster care, and has actually regressed in her parenting abilities. Moreover, Child entered foster care several days after his birth, and has not resided with Mother for any significant period of time. Child is bonded with his foster parents and is thriving in their care. As this Court has explained in the context of involuntary termination of parental rights proceedings, "a child's life cannot

- 12 -

be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

Accordingly, our independent review of Mother's issue demonstrates that it does not entitle her to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. ***See Flowers***, 113 A.3d at 1250. Therefore, we grant counsel's petition to withdraw, and we affirm the January 30, 2017 order.

Petition to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2017

- 13 -