J-S38001-21
J-S38002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1013 WDA 2021 |

Appeal from the Order Entered August 4, 2021
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s):  CP-04-DP-0000012-2020,
Juvenile No.35-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.H., JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1014 WDA 2021 |

Appeal from the Order Entered August 4, 2021
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s):  CP-04-DP-0000011-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1052 WDA 2021 |

Appeal from the Order Entered August 4, 2021
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s):  Docket No. CP-04-DP-0000012-2020,

J-S38001-21
J-S38002-21

FID# 04-FN-000004-2010, Juvenile No. 35-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.H., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1053 WDA 2021 |

Appeal from the Order Entered August 4, 2021
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s): cp-04-dp-0000011-2020

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: JANUARY 25, 2022**

M.H. ("Father") and S.L. ("Mother") ("Parent" or "Parents") appeal from the orders, entered on August 4, 2021, changing the permanency placement goal for the parties' two dependent children, M.H., Jr. (born in March of 2019) and A.H. (born in February of 2020) ("Child" or "Children") from reunification to adoption.[1] Following our review, we affirm.

In March of 2020, the Children were deemed dependent and were placed in non-kinship foster care where they have remained during the entire

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Both Parents filed appeals from the separate orders issued by the trial court as to each Child. The trial court issued a single Pa.R.A.P. 1925(a) opinion on September 28, 2021, setting forth an extensive discussion of the facts and procedure involved in this case and directing its discussion at issues raised by both Father and Mother. Therefore, because this single opinion relates to both Parents, we have consolidated Father's and Mother's appeals for purposes of appellate review.

- 2 -

pendency of this matter. Permanency review hearings were held on June 11, 2020, October 21, 2020, January 7, 2021, January 11, 2021, April 5, 2021, and August 2, 2021. The Beaver County Children and Youth Services Agency ("Agency") requested that a change of goal to adoption be considered by the trial court at the August 2nd permanency review hearing. The resulting orders changing the goals for Children are at the heart of this appeal.

In its Pa.R.A.P. 1925(a) opinion, the trial court summarized its findings of fact as follows:

> The [c]ourt acknowledged that a crossroads was reached in this case and in the lives of the Children. At times when the Parents were found to be improving their condition, they shortly regressed and relapsed. The relapses and regressions were only part of the problems. The other aspect of that conduct was that the [P]arents did not seriously avail themselves to the treatment offered to them even though it was made clear to them by the [c]ourt that addiction was treated as an illness, which if disclosed properly, could be properly treated.
>
> [] Father chose to utilize O.A.R.S. for his therapy, his counseling and to obtain his Suboxone. However, even though he was to be receiving Suboxone for his treatment, he did not test positive for that substance on the day of the [h]earing.
>
> Father has a twelve (12) year history of drug abuse[,] yet he chose to participate in therapy that did not fully address his addiction. Father has not committed to fully addressing his addiction issue and … the limited therapies/counseling that he does receive is of minimal benefit and is a necessary precondition to Father['s] receiving his Suboxone.
>
> Father was still not serious about addressing his addiction issue.
>
> A specific finding was made that Father had his Suboxone out and near the face of M.H., Jr., when Father was sitting on the couch with the minor.

The [c]ourt found that Father specifically relapsed in May of 2021[,] and he continued to exhibit a lack of real commitment to learning to treat his addiction. The [c]ourt concluded that the once[-]a[-]month therapy, [and] sporadic A.A./N.A. meetings[,] were not comprehensive enough to deal with the scope of Father's addiction. The [c]ourt also found that Father knew that Mother was also in active addiction and[] that Mother knew that Father was in active addiction. However, neither Parent reported the addiction issues to anyone so that proper treatment could be obtained or that a safety plan could be put in place if the [P]arents were using. The Parents were found to be using drugs during times that they were visiting with the Children and that the Children were at risk of being improperly attended to during the visits in which the Parents were actively using.

Mother was in an inpatient facility for twenty-eight (28) days and during that time, Father did not call the Foster Family at all. He showed no concern for the care or well-being of the Children during this twenty-eight (28) day period.

Both Mother and Father had no supports in place to whom they could go during times that they were using and the Children were to be in their custody. Further, the Parents showed no willingness or ability to inform others of the times that they were using so that other supports could attend to the Children during those times.

With regard to Mother, the [c]ourt found that Mother was using drugs prior to the time that she began her inpatient therapy. She was using those drugs without disclosing it to the Agency or any other party that could have provided support or care. Further, Father was aware that Mother was using and Father told nobody of her serious and active addiction.

Mother missed numerous drug screens and refused to take scheduled drug screens. All of the screens that she refused to take and those screens for which she failed to show up for were deemed to be positive responses.

Mother was found to utilize family resources to obtain drugs and Mother continued to attend visits with the Children while she was under the influence of drugs and that this was a three (3) to four (4) times a week occurrence.

It was acknowledged that Mother was treated at an inpatient rehabilitation facility for twenty-eight (28) days, a portion of which was used for detox. After Mother was released from inpatient treatment, she did not follow the discharge instructions which required intensive outpatient treatment: Her only follow-up action was to attend an evaluation that occurred one (1) week before the Permanency Review Hearing. For approximately one and one[-]half (1½) months after her discharge, she took no action to follow-up with her discharge instructions. A recent drug screen was positive for Suboxone even though it had been more than three (3) or four (4) months since Mother received her last Suboxone injection. The [c]ourt found incredible Mother's testimony that Suboxone was in her system as a result of the March[] 2021 injection and Mother's reasons for failing to attend the intensive outpatient treatment. The [c]ourt found that Mother was not serious about her drug and alcohol treatment. Mother was aware that she had been through at least two (2) unsuccessful inpatient treatments, but [she] still did not comply with the discharge instructions[,] which required intensive outpatient treatment. The [c]ourt found that Mother was not committed to her mental health or drug and alcohol treatment and that, to the contrary, she was still going through the motions as opposed to taking that treatment seriously. The [c]ourt found that Father's trigger for drug use was noted to be boredom and that Mother's trigger was when her mental health was off[;] she used drugs to deal with her mental condition. The [c]ourt then found that relapses for both Mother and Father were on the precipice of happening again because of the lack of seriousness that each Parent devoted to their treatment endeavors for which they failed to make a real and serious commitment.

The [c]ourt's finding included its conclusion that the reoccurring use of drugs for the Parents was something that the Parents have not been able to address and that relapse was a predictable event in light of the Parent[s'] failure to commit to treatment. The Parents were found incapable of being able to address the safety and care of the Children while they were using because of an inability to put a safety plan in place in the event that there was a relapse. The Parents' drug use and relapses were found to be a repeating cycle that the Parents did not address.

. . .

- 5 -

The findings [in the August 3, 2021 permanency review order] were stated on the record and are incorporated into this decision. In summary, both Parents recently relapsed at a time when visits with the Children were to increase. Each Parent knew that the other was in active addition and neither Parent notified the Agency or another responsible adult so that other accommodations for the Children could be made when they were using. Father's main drug treatment is a once[-]a[-]month therapy session that is required for him to receive his Suboxone. Mother went through inpatient treatment for twenty-four (24) days beginning May 24, 2021. She did not commit to the recommended discharge treatment of intensive outpatient treatment and only obtained her evaluation on July 26, 2021, one (1) week before the Change of Goal Hearing.

When … [M]other was doing her inpatient treatment, Father never called the Foster Parents to check on the Children. Father has never called the Foster Parents to check on the Children. During a June visit, Father exposed one Child to a [S]uboxone strip under circumstances where he was sitting with the Child and opening a [S]uboxone strip at that time.

The domestic violence between Mother and Father has once again become more prevalent even during visits with the Children.

Trial Court Opinion (TCO), 9/28/2021, at 25-29 (footnotes to record omitted).

The court then explained its reasoning as follows:

In this case, the court made specific findings that Mother and Father were not in compliance with the Family Service Plan, as Mother and Father both failed to undergo and comply with their drug and alcohol treatment[.] Parents both relapsed notwithstanding their treatment, the domestic violence between Parents was again becoming more prevalent[,] including during times when the Parents are visiting with the Children, and Father exposed one child to a [S]uboxone strip during one of the visits. Parents were not making progress. The [c]ourt found that Mother and Father both relapsed and have not tried to implement the skills taught in their respective drug and alcohol treatment despite positive prodding by the [c]ourt and the caseworker. The caseworker followed up with the mental health and drug and alcohol providers and she tried to persuade Parents to engage with those providers. In this case, everything was in place for Parents to work on the services that the Agency deemed appropriate for

the Children to be returned to Parents. As the trial court found, Parents minimally complied with the Service Plan and were making merely moderate progress toward alleviating the conditions which led to the Children['s] being removed from the care of Parents. The Children have been in foster care for seventeen (17) months and Mother is still not cooperating with the Agency and Father continues to reside with Mother.

. . .

In the instant case, both Parents have recently relapsed. Mother continues to refuse to cooperate with the Agency. Mother never made any effort to check on the Children while she was in inpatient treatment. Father does not and has not ever made any effort to check on the Children. Parents continuously refuse to submit to random drug screens.

Parents have not sufficiently engaged in drug and alcohol counseling. Father's minimal attempt to complete drug and alcohol treatment is attending a monthly medication management appointment, which he is not consistently attending. This is not in compliance with the court[-o]rdered drug and alcohol treatment and the Family Service Plan requirements. Mother completed inpatient drug treatment, but failed to comply with the requirement that she attend intensive outpatient treatment upon discharge. Mother instead, on the eve of the goal change hearing, obtained another independent drug and alcohol evaluation from another provider that recommended the same level of treatment as her prior discharge from inpatient treatment.

Although Parents have maintained stable housing throughout the pendency of this action[, they] are prone to domestic violence incidents, which have become more prevalent in the past few months, including … at times when the Parents are visiting with the Children.

*Id.* at 36-37, 38-39.

Based on these findings, the trial court determined the goal for the

Children should be changed to adoption. Each Parent filed appeals from the

- 7 -

orders entered by the trial court relating to each Child. Both Parents also filed

concise statements of errors complained of on appeal.

Father raises the following issues in his brief to this Court:

1. Did the [t]rial [c]ourt err in finding that the permanency goal of the above cases should be from reunification to adoption?

2. Did the [t]rial [c]ourt err in finding that [Father] made minimal progress in alleviating the circumstances that necessitated placement of the [C]hildren at issue?

3. Did the [t]rial [c]ourt err in finding that [Father] was moderately compliant with the permanency plan?

Father's brief at 1. In her brief, Mother raises three issues:

1. Whether the [t]rial [c]ourt erred and abused its discretion when the trial court found a goal change appropriate when there was insufficient evidence presented to the [t]rial [c]ourt to support the finding that the current placement goal was not appropriate and/or feasible.

2. Whether the [t]rial [c]ourt erred and abused its discretion when the trial court found Mother made minimal progress in alleviating the circumstances that necessitated placement.

3. Whether the [t]rial [c]ourt erred and abused its discretion when the trial court found Mother was moderately compliant with the permanency plan.

Mother's brief at 7-8.

We review issues relating to the changing of the placement goal for

Children to adoption pursuant to the following:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

- 8 -

*In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

> *In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

*In re J.D.H.*, 171 A.3d 903, 908 (Pa. Super. 2017).

Having reviewed the record and the statutory directives governing a goal change, we determine that the findings support the conclusion that reunification of Children with Parents is not a realistic goal. The court took into account the entire history of this case and noted the period of time that the Children have been in placement. The court also recognized Mother's mental health issues and both Parents' drug and alcohol problems, noting that despite the services provided and/or offered throughout the history of this matter, the Parents have been unable to maintain a safe environment for the Children.

Our Supreme Court in *R.J.T.* discusses why this Court must employ an abuse of discretion standard of review when these types of cases are before us. *R.J.T.*, 9 A.3d at 1190. Noting that appellate courts are not in a position to make fact-specific determinations, the Supreme Court stated:

> Not only are our trial judges observing the parties during the hearing, but usually, … they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*Id.*

Both Mother and Father are primarily seeking to have this Court reweigh the evidence in a light more favorable to them individually. However, it is beyond our purview to disturb the credibility determinations of the trial court when the testimony relied upon is supported in the record. The trial court was free to conclude that neither Mother nor Father were likely to remedy their issues in the near future and, thus, the permanency needs of Children dictate changing their goal to adoption. The trial court gave reasons for its determination that adoption was the appropriate goal for these Children. The reasons are based upon the evidence of record. Finally, we are aware that the "[s]afety, permanency, and well-being of the child[ren] must take precedence over *all* other considerations, including the rights of the parents."

*In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006) (emphasis in original). The goal of adoption will end Children's languishing in limbo. Accordingly, we conclude that the trial court did not err in ordering the change of goal for both Children from reunification to adoption.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2022