J-A11010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.D., STEP-FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1296 EDA 2021 |

Appeal from the Order Entered June 7, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001116-2019

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED JULY 19, 2022**

K.D. ("Stepfather") appeals from the June 7, 2021[1] order changing the permanent placement goal of his then-sixteen-and-one-half-year-old step-daughter, T.R., from reunification to another planned permanent living arrangement ("APPLA"), *i.e.*, permanent long-term foster care until the age of majority, pursuant to 42 Pa.C.S. § 6351 (f.1)(5). Stepfather's counsel, James W. Martin, Esquire, has filed in this Court a petition to withdraw from

_____

[1] The egregious delay in this children's fast track appeal was due to the aggregate effect of Stepfather's failure to file a concise statement concurrent with his *pro se* notice of appeal pursuant to Pa.R.A.P. 1925(a)(2), the trial court's confusion regarding both the status of Stepfather's representation and Stepfather's desire to represent himself *pro se*, and our resolution of DHS's request to quash the appeal, which we denied without prejudice. Counsel was appointed and ultimately filed a Rule 1925 statement on November 8, 2021. The trial court entered its opinion on January 10, 2022, and the appeal was assigned to this panel on May 3, 2022.

representation and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967). We grant the petition and affirm.

T.R. was born to D.S. ("Mother") in August 2004.[2] T.R.'s biological father is unknown. Stepfather is the biological father of seven of T.R.'s younger siblings, who all were previously adjudicated dependent, but are not involved in this appeal. On July 5, 2019, the Philadelphia Department of Human Services ("DHS") filed a dependency petition alleging T.R. to be a dependent child based upon allegations of physical abuse and neglect. Following DHS's initial intervention, Stepfather and Mother filed a petition for an *ex parte* protection from abuse ("PFA") order against T.R., and Mother contacted the agency to relinquish her parental rights to T.R. **See** N.T. 9/4/19 at 79-82. Mother ultimately declined to relinquish her parental rights, and the temporary PFA order expired without the imposition of a final order. **Id**. at 82.

The trial court granted DHS's dependency petition and on September 4, 2019, the court made a finding of physical abuse and neglect against Stepfather and Mother.

The trial court summarized the ensuing dependency proceedings as follow:

> The trial court found that returning [T.R.] to the home would be contrary to her welfare and that reasonable efforts had been made

---

[2] Although D.S. also appealed the June 7, 2021 order, she subsequently withdrew her appeal.

to prevent or eliminate removal from the home. Stepfather was allowed to participate in the single case plan meeting regarding [T.R.] and family therapy. The placement agency was ordered to have appropriate placement that allowed [T.R.]'s religious beliefs. The placement agency was ordered to make inquiry to [T.R.'s] imam or mosque regarding [T.R.]'s particular religious beliefs. [T.R.]'s goal was to return to parent which was Mother as [T.R.]'s Father was unknown.

On August 30, 2019, DHS filed a motion to amend [T.R.'s] dependency petition and for finding of child abuse, wherein it stated that DHS received a child protective services [("CPS")] report on July 14, 2019 that alleged that . . . Stepfather would: tap, pinch, and smack [T.R.] on the behind; tap her breasts from the bottom to make them bounce; make her siblings go upstairs while she was made to remain downstairs while he took a shower in the downstairs bathroom for him to then come out exposed and order her to get a towel and tell her that one day she will be a wife and will have to have sex. The motion indicated both Mother and Stepfather as perpetrators of abuse, spanning across multiple occasions. [The CPS report was subsequently substantiated insofar as the trial court deemed Stepfather a perpetrator of sexual abuse or exploitation as to T.R. Nevertheless, T.R.'s goal remained return to Mother or guardian.]

. . . .

On June 26, 2020, Judge Deborah Canty, having been transferred the case under the Family Engagement Initiative, heard the case and ordered that there be no contact between the Stepfather and [T.R.] as she remained in the care and custody of DHS. The trial court noted that there was a criminal stay-away order against the Stepfather as to [T.R.] The trial court further ordered that placement continued to be necessary and that reasonable efforts had been made to place [T.R.] with her siblings (who subsequently entered care). [T.R.'s] goal was to return to parent or guardian.

Trial Court Opinion, 1/10/22, at 6-7 (citations omitted) (cleaned up) (unnecessary capitalization omitted).

Thereafter, during a permanency review hearing in which Stepfather participated with counsel on November 18, 2020, the trial court interviewed

T.R. *in camera* and considered her desire to change the goal to APPLA, which would permit her to remain in the agency's care until she reaches the age of majority, and the support of that goal offered by the community umbrella agency ("CUA").[3]  The court determined that APPLA was the most appropriate permanency goal that served T.R.'s best interest, and announced the goal change in open court.  *See* N.T., 11/18/20, at 197, 202, 222.  Stepfather did not object to the goal change, challenge the decision to not place T.R. with Mother or other family members, or assert that the goal change impaired T.R.'s ability to practice her chosen religion, Islam.

On the same date, the court entered an order that formally changed the child's goal to APPLA and continued her placement in the Carson Valley Group Home, where she has resided since August of 2020.  Father did not appeal the goal change order.

Notwithstanding the November 2020 permanency review order that clearly changed T.R.'s goal from reunification to APPLA, at the close of the subsequent review hearing on March 12, 2021, the trial court entered an order that omitted any reference to APPLA and identified T.R.'s permanent placement goal as "return to parent or guardian."  *See* Permanency Review Order, 3/12/21, at 1.  During the ensuing permanency review hearing on June

_____

[3] The trial court appointed Stacie Tepe, Esquire as T.R.'s guardian *ad litem*, sometimes referred to as child advocate, during all of the relevant permanency review hearings.

7, 2021, the trial court revisited the issue concerning T.R.'s placement goal and identified it as APPLA, which was consistent with the testimony presented by Nicole Mack, the CUA case manager. N.T., 6/7/21, at 74, 77, 80. Stepfather did not contest the court's apparent recharacterization of T.R.'s permanent placement goal as being APPLA or assail any aspect of that goal's appropriateness under the facts of this case. Accordingly, the trial court entered the following order purporting to change T.R.'s placement goal to APPLA:

> PERMANENT PLACMENT-Change of Goal
>
> The Court Orders, the new permanent placement goal hereby determined to be in another living arrangement intended to be permanent in nature which is approved by the court, specif[ically] APPLA.

Permanency Review Order, 6/7/21, at 1. This appeal followed.

As discussed in footnote one, Attorney Martin eventually complied with Pa.R.A.P. 1925, asserting three issues challenging the goal change, and the trial court filed its Rule 1925(a) opinion. Accordingly, the appeal is ripe for our review.

First, we address whether the appeal is timely, and determine that it is. Stepfather filed the instant appeal on July 1, 2021, which is within thirty days of the date that the trial court entered the June 7, 2020 order. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."). Hence, the

appeal is patently timely, and we have jurisdiction. ***Coulter v. Ramsden***, 94 A.3d 1080, 1084 (Pa.Super. 2014) (timeliness of appeal implicates court's jurisdiction and must be determined before court addresses merits of appeal).

Nevertheless, noting that Stepfather's Rule 1925(b) statement challenged T.R.'s permanent placement goal of AAPLA, the trial court asserts that Stepfather's appeal is, in fact, untimely because the court initially changed the goal to APPLA in November 2020. Hence, discounting its interceding order identifying the goal as reunification as an administrative error, the court posits, "A mere resuscitation of [T.R.'s] goal [in the June 7, 2021 order] does not dissolve the trial court's initial November 18, 2020 order that changed the . . . permanency goal to APPLA." Letter, 11/19/21, at 1. For the following reasons, we disagree.

Contrary to the trial court's suggestion, we cannot simply ignore the legal force of its June 7, 2021 permanency order which effectively returned T.R.'s placement goal to reunification, albeit mistakenly. Thus, even though Stepfather may be barred from challenging the goal change noted in November 2020, he is fully entitled to contest the "resuscitat[ed]" goal change entered to correct the interceding order returning the goal to reunification. Trial Court Letter, 11/19/21 at 1; ***see Interest of L.V.***, 209 A.3d 399, 411 (Pa.Super. 2019) (quoting ***In re H.S.W.C.-B & S.E.C.-B.***, 836 A.2d 908, 911 (Pa. 2003) ("an order granting or denying a status change . . . shall be deemed final when entered").

Furthermore, we are especially mindful that our Juvenile Act requires the trial court to continuously monitor a child's best interests and adjust the permanent placement goal based on the evidence adduced at the periodic permanency review hearings. Accordingly, we cannot merely disregard, *post hoc*, the interceding March 12, 2021 goal change order as a mere clerical misstep. Insofar as the instant goal change order resurrected the goal of APPLA by correcting this earlier oversight, we reject the trial court's contention that Stepfather's appeal from **that** goal change is time barred. ***See Interest of L.V.***, ***supra*** at 411.

Next, we address counsel's petition to withdraw and ***Anders*** brief. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa.Super. 2005) ("'When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (citation omitted); ***see also In re J.D.H.,*** 171 A.3d 903, 906 (Pa. Super. 2017) ("[W]e conclude that the ***Anders*** procedure should also apply in appeals from goal change orders, even in the absence of an involuntary termination decree.").

To withdraw pursuant to ***Anders***, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

- 7 -

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted).

With respect to the third *Anders* requirement, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, the Pennsylvania Supreme Court has directed that *Anders* briefs must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra*, at 361.

Here, Attorney Martin avers in his petition to withdraw that he determined that Stepfather's appeal is frivolous after conducting a thorough and conscientious examination of the record. Attorney Martin avers he mailed Stepfather a letter explaining his rights and has attached a copy of the letter to the petition to withdraw and *Anders* brief. Attorney Martin's letter complies with our law, as it informs Stepfather that he may retain new counsel or proceed *pro se* and raise any additional arguments he deems worthy of our

attention.[4] Attorney Martin's *Anders* brief includes a summary of the facts, procedural history of this case, three issues that could arguably support Stepfather's appeal, and an assessment of why those issues are frivolous, with citations to the record and relevant legal authority. As Attorney Martin has complied substantially with the technical requirements of *Anders*, we will proceed to review the issues presented in his brief. We will also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.Super. 2015); *see also Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

_____

[4] Attorney Martin's February 10, 2022 letter omitted the word "raise" from the sentence, "You have the right to retain private counsel, or, *pro se*, [raise] any additional arguments that you deem worthy of the court's attention." Letter, 2/10/22, at 1. However, because paragraph 10 of the petition to withdraw confirmed that Attorney Martin advised Stepfather of his right to "raise *pro se* additional arguments that he deems worthy of the court's attention," we find substantial compliance with the technical requirements. Petition to Withdraw, 2/17/2022, at 2. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa.Super. 2015) (observing, substantial compliance with *Anders* requirements is sufficient).

Attorney Martin identified three substantive issues for our consideration, which we renumbered for ease of disposition, as follows:[5]

1. Did the trial court err as a matter of law or abuse its discretion where it determined that T.R.'s permanency goal should be Another Planned Placement Living Arrangement (APP[L]A)?

2. Did the trial court err as a matter of law or abused its discretion where it failed to place T.R. with her mother, or, in the alternative, another family member.

3. Did the trial court err as a matter of law or abused its discretion when it changed the permanency goal for T.R. to APPLA, thereby depriving the Child the ability to practice the family's religious beliefs?

*Anders* brief at 3. In lieu of briefs, both DHS and the guardian *ad litem* filed letters stating their respective agreement that the instant appeal is frivolous.

As the first issue discussed in the *Anders* brief challenges the goal change from reunification to APPLA, we outline the following legal principles. This Court reviews orders in dependency proceedings for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We must accept the trial court's credibility determinations and findings of fact when the record supports them, but we need not accept the court's inferences or conclusions of law. *Id*. When considering a goal change petition, the trial court must determine the matters set forth at 42 Pa.C.S. § 6351(f) of the Juvenile Act, *i.e.*, the appropriateness, feasibility, and likelihood of attaining the

---

[5] Having found that Attorney Martin satisfied the technical requirements of *Anders* and *Santiago*, we omit the question relating to that issue from this list.

current goal, the parents' progress, child's safety, *etc*. ***See In re S.B.***, 943 A.2d 973, 978 (Pa.Super. 2008). In making these determinations, the best interests of the child, and not the interests of the parent, must guide the trial court. ***See In re A.B.***, 19 A.3d 1084, 1088-89 (Pa.Super. 2011).

Instantly, Stepfather contests the goal change from reunification with parent or guardian to APPLA. The Juvenile Act outlines the requirements of APPLA in § 6351, as follows:

> (f.1) Additional determination.--Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> . . . .
>
> (5) If and when the child will be placed in another planned permanent living arrangement which is approved by the court, the following shall apply:
>
> (i) The child must be 16 years of age or older.
>
> (ii) The county agency shall identify at least one significant connection with a supportive adult willing to be involved in the child's life as the child transitions to adulthood, or document that efforts have been made to identify a supportive adult.
>
> (iii) The county agency shall document:
>
> (A) A compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and willing relative.
>
> (B) Its intensive, ongoing and, as of the date of the hearing, unsuccessful efforts to return the child to the child's parent, guardian or custodian or to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and willing relative.

(C) Its efforts to utilize search technology to find biological family members for the child.

(iv) The court shall:

(A) Ask the child about the desired permanency goal for the child.

(B) Make a judicial determination explaining why, as of the date of the hearing, [APPLA] is the best permanency plan for the child.

(C) Provide compelling reasons why it continues not to be in the best interests of the child to return to the child's parent, guardian or custodian, be placed for adoption, be placed with a legal custodian or be placed with a fit and willing relative.

(D) Make findings that the significant connection is identified in the permanency plan or that efforts have been made to identify a supportive adult, if no one is currently identified.

42 Pa.C.S. § 6351(f.1) (5)

Instantly, T.R. is at least sixteen years old and Stepfather does not challenge any of the foregoing statutory requirements relating to DHS or the trial court. Instead, Attorney Martin identifies three arguments that arguably support the appeal, *i.e.*, that the trial court erred in: (1) selecting the permanency goal of APPLA for T.R.; (2) declining to reunify T.R. with Mother or another fit and willing relative; and (3) impeding her right to religious liberty. Unfortunately for Stepfather, Attorney Martin also accurately observes that all of these issues are waived pursuant to Pa.R.A.P 302(a) because, as previously noted, Stepfather failed to raise any allegations of error during the relevant permanency review hearing. **See** Pa.R.A.P. 302(a) ("Issues not

raised in the trial court are waived and cannot be raised for the first time on appeal.").

Even if these belated assertions were properly preserved, they are wholly frivolous. The record bears out that then-sixteen year-old T.R., who has been DHS custody since July 2019, advised the trial court that she did not want to reunify with Mother or Stepfather, whom she has not contacted since she was placed in DHS care. Furthermore, T.R. desired APPLA over adoption, which would require her consent, or permanent placement with a caretaker. *See* N.T. 11/18/20 at 95, 114. In this vein, the certified record also belies Stepfather's contention that the trial court did not consider permanent kinship placement. Indeed, Mother and Stepfather sabotaged the agency's efforts to place T.R. with relatives or community members. They refused to identify potential family resources and objected to the thirty-nine people that CUA located via family finding, even threating those individuals with litigation. *Id*. at 114, 115-116.

Similarly, contrary to Stepfather's protestations, the court considered T.R.'s religious needs, and as aptly stated in the trial court opinion, T.R. "has never raised an issue with her religious needs . . .[and] the court ensured that efforts were made to implement [the] religious requirements of the entire family but Mother and Step-Father failed to supply the necessary information[.]" Trial Court Opinion, at 40. 6/10/22. Moreover, the trial court directed that "any foster home considered would allow [T.R.] to pray whenever she needs to pray and to practice [Salafi]," which is her sect of Islam. *Id*.

Hence, the claim regarding the alleged limitation on T.R.'s religious liberty is baseless.

As our independent review of the record reveals no preserved non-frivolous issues, we affirm the June 7, 2021 order changing T.R.'s permanency goal from reunification to APPLA, and grant Attorney Martin's petition to withdraw.

Petition to withdraw from representation filed by James W. Martin, Esquire, is granted. Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2022