J-A29009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 842 WDA 2023 |

Appeal from the Order Entered June 27, 2023
In the Court of Common Pleas of Clarion County Civil Division at No(s):
CP-16-DP-0000002-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 843 WDA 2023 |

Appeal from the Order Entered June 27, 2023
In the Court of Common Pleas of Clarion County Civil Division at No(s):
CP-16-DP-0000003-2022

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.: **FILED: February 9, 2024**

D.S. ("Mother") appeals the orders changing the goals from reunification to adoption for her two children, S.S., born in January 2020, and N.B., born in September 2021.[1] Mother's counsel has filed a petition to withdraw and

---

[1] We consolidated the matters *sua sponte*. At the time of the hearings, S.S.'s biological father remained unknown. N.B.'s father participated in the goal change hearings but did not appeal to this Court.

brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We affirm the goal change order and grant counsel's petition to withdraw.

We glean the following from the certified record. Clarion County Children and Youth Services ("CYS") first became involved with Mother in May of 2021, before N.B. was born, when she was evicted from her apartment. Mother continued to struggle with housing stability, and S.S. and N.B. were adjudicated dependent on March 10, 2022, and removed from Mother's care on June 20, 2022. They were initially placed in kinship care with Mother's cousins, E.M. and A.M. Meanwhile, N.B.'s father pled *nolo contendere* to simple assault and strangulation based upon a domestic violence incident with Mother, and was incarcerated as a result.

One of CYS's main concerns was Mother's ability to obtain stable housing, which had been exacerbated by her struggles to maintain employment to be able to pay for housing. Between CYS's initial involvement and the children's removal, Mother had resided in twelve different places. Although Mother obtained an apartment with the aid of rental assistance in March 2022, she was evicted in September 2022 because she was unable to pay the rent once the rental assistance ended. Thereafter, Mother moved in with N.B.'s father. In January 2023, Mother gave birth to R.B.[2] One month

---

[2] R.B. shares the same father as N.B. R.B. is not otherwise involved in the underlying dependency matters and is not under the jurisdiction of CYS as she has never lived in Clarion County.

later, Mother and R.B. moved to a shelter to escape the domestic violence perpetrated by the father of R.B. and N.B. against Mother. Around this time, Mother also began a romantic relationship with C.A., who is a registered sexual offender based upon his conviction for sexually assaulting a three-year-old girl. Despite CYS providing warnings to Mother about her involvement with C.A., she has chosen to continue that relationship.

Mother left the shelter in April 2023 to comply with the terms of her probation.[3] However, she tested positive for methamphetamines within days of returning to the supervising county, thereby violating her probation and subjecting her to incarceration. When she was released in May 2023, Mother began residing in her car.

Regarding her other goals, Mother regularly attended trauma therapy as directed, but her counselor expressed concerns about Mother's honesty during sessions, particularly as the counselor was unaware of her relationship with C.A. Mother was also directed to receive mental health treatment for her previously diagnosed PTSD, ADHD, alcohol use disorder, and major depressive disorder. She was inconsistent with treatment and taking her medicine as prescribed. Mother completed a parenting course and regularly attended supervised visits with S.S. and N.B. without any major issues being reported.

With respect to the children's placement, S.S. and N.B. left their kinship placement after approximately five months for health reasons and were briefly

---

[3] Mother is on probation for endangering the welfare of children until October 14, 2025.

placed in a different foster home before moving to the instant, pre-adoptive foster home in January 2023. After asking CYS to remove S.S. and N.B. from their care, E.M. and A.M. provided kinship care for and ultimately obtained custody of R.B.

A permanency review hearing was scheduled for May 30, 2023. Prior to the hearing, CYS recommended that the goal for S.S. and N.B. be changed from reunification to adoption by their current foster parents. The trial court held hearings on the goal change request on May 30, 2023 and June 14, 2023, and heard testimony from the CYS caseworker, Mother's probation officer, and E.M.

The CYS caseworker testified regarding Mother's progress, as well as that of N.B.'s father. Between the two hearings, Mother ceased communication with CYS and was arrested for a multitude of probation violations, including failing a drug screen for methamphetamines and amphetamines. Mother's probation officer offered testimony about her continued relationship with C.A. and drug usage. Finally, E.M. attested that he and his wife had requested the removal of S.S. and N.B. because A.M. had social anxiety, A.M.'s grandparents had passed away, S.S. had been exhibiting difficult behaviors, and CYS did not do enough to assist them. As noted, after S.S. and N.B. were placed in the current foster home, E.M. and A.M. began to care for R.B. At the hearing, E.M. expressed that he and A.M. decided that they wanted to adopt S.S. and N.B., in line with Mother's desires, and they conveyed their intent to CYS. In that vein, the CYS caseworker had testified

bluntly that the agency no longer considered E.M. and A.M. to be viable placement options because they had voluntarily relinquished care for the children previously when it had become too difficult to care for them.

At the conclusion of the hearing, N.B.'s father withdrew his objection to the goal change request, acknowledging that he would not be able to provide stable housing for N.B. in the near future. **See** N.T. Hearing, 6/14/23, at 49. Mother, likewise, indicated that she was no longer opposing the goal change request because "she believe[d] that her three [youngest] children staying together in the care of [E.M. and A.M.] would be in their best interest[.]" **Id**. In arguing for the goal change, CYS explicitly stated that S.S. and N.B. **would not** be returning to the care of E.M. and A.M., but instead would be considered for adoption by the current foster parents. This course of action was due to a "longstanding [CYS] policy" that when any care provider voluntarily requests removal of the children, as E.M. and A.M. did with S.S. and N.B., the children would not be placed back into that home. **Id**. at 50. After hearing this, Mother did not seek to renew her challenge to the goal change.

The trial court granted CYS's goal change motions and ordered that placement remain with the current foster parents for both children. Mother timely appealed the goal change orders and included a statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(a)(2)(i). The trial court thereafter authored two, short, Rule 1925(a) opinions.

In this Court, counsel has filed an **Anders** brief. **See In re J.D.H.**, 171 A.3d 903, 906 (Pa.Super. 2017) (holding that the **Anders** procedure applies

in appeals from goal change orders).  Therefore, before reaching the merits of any claims, we must first determine whether counsel has complied with the dictates of **Anders** and its progeny.  In that regard, counsel must do three things.  First, counsel shall file a petition to withdraw, "stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous[.]" **In re J.D.H.**, **supra** at 907 (cleaned up).  Second, counsel must "furnish a copy of the **Anders** brief to the appellant[.]" **Id**. (cleaned up).  Finally, counsel is required to attach to the petition a copy of the letter counsel sent to the appellant advising him of his immediate "right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention." **Id**. (cleaned up).  Our Supreme Court further clarified that the **Anders** brief filed in this Court must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

Upon review of the certified record, counsel has substantially complied with the above technical requirements.  Accordingly, we now turn to the substantive claim Mother wishes to raise, namely, whether the trial court erred

in changing the permanency goals for S.S. and N.B. from reunification to adoption. In doing so, we are guided by the following legal precepts:

> The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.
>
> Pursuant to 42 Pa.C.S. § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re J.D.H.*, *supra* at 908 (cleaned up).

Essentially, counsel posits that Mother's challenge is premised not upon the goal change itself, but upon the chosen adoptive resource. Specifically, Mother did not want the adoptive resource to be the current foster parents of S.S. and N.B., with whom they had been residing for approximately six months, but instead to be with Mother's kin, E.M. and A.M. *See Anders* brief at 9-11.

The trial court offered several reasons in support of its goal change order. First, since the children's dependency in March 2022, Mother has failed

to maintain stable and appropriate housing, despite receiving rent assistance.

*See* Trial Court Opinion (N.B.), 7/25/23, at unnumbered 1.[4]  Moreover, the

court continued,

> She has not had custody of the child for many months.
>
> [Mother] is drug dependent and has not attended treatment sessions as directed.  [Mother] is presently on probation and at [the] time of the hearing she was incarcerated for a probation violation for use of drugs.  She denied using, but she tested positive for methamphetamine and amphetamine.  She did admit she snorted her psychiatric medication.  She will remain incarcerated.
>
> [Mother] is in an ongoing romantic relationship with a registered sex offender who also abuses illegal drugs.  She has rejected recommendations from authorities that she should terminate that relationship.  She does not understand the need to protect the child[ren] from him.  She became pregnant and wants to have other children.
>
> [Mother] has not maintained steady employment and has no income to support [the children] or herself.
>
> At the conclusion of the hearing on June 1, 2023, [Mother] stated she did not oppose a goal change to adoption.  She was represented by court-appointed counsel.
>
> Since March 2022[,] CYS has made reasonable efforts to finalize the permanency plan for reunification, but [Mother] has shown only minimal compliance and progress.  She has demonstrated she is unwilling or unable to achieve the goal of reunification.  CYS has identified prospective adoptive parents.

*Id*. at unnumbered 1-2 (cleaned up).

---

[4] The trial court's Rule 1925(a) opinion pertaining to S.S. offers the same reasoning in support of S.S.'s goal change order.  For ease, we cite only the opinion pertaining to N.B.'s appeal.

The certified record fully bears out the trial court's conclusions regarding the factors enumerated in **J.D.H.** Surely, Mother would prefer the children to return to the care of her family members. However, those same family members had previously asked for the children to be removed from their care when it became too difficult. Contrarily, at the time of the hearing, the current foster parents had been caring for the girls for approximately six months, ensuring that they were receiving all of the necessary medical and special care, and were willing and able to adopt them. We can discern no abuse of discretion on the trial court's part in changing the goals from reunification to adoption for both S.S. and N.B., and in keeping them in placement with the current foster parents.

Further, our independent review confirms that Mother is not entitled to relief and has not revealed any non-frivolous issues that counsel may have unintentionally overlooked. *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.Super. 2015). Therefore, we grant counsel's petition to withdraw and affirm the goal change orders.

Petition to withdraw granted. Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/09/2024