J-S29004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.A.E.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 372 WDA 2022 |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Clarion County
Orphans' Court at No(s):  No. 23 OC 2022

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                 **FILED: OCTOBER 21, 2022**

A.J. ("Mother") appeals from order granting the petition filed by the Clarion County Children and Youth Services ("CYS") and terminating Mother's parental rights of her daughter C.A.E.B. ("Child"), born in February 2010, under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).[1] Additionally, Gina L. Bianco, Esquire ("Attorney Bianco"), Mother's counsel, has filed a petition for leave to withdraw as counsel and an accompanying brief pursuant to ***Anders***

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of C.B.'s father, J.B. ("Father"). Father has not appealed the termination of his parental rights.

*v. California*, 386 U.S. 738, 744 (1967).[2] We grant Attorney Bianco's petition for leave to withdraw and affirm the order.

In September 2020, CYS filed a petition alleging Child's dependency due to unstable housing and homelessness; concerns about Mother's mental health; and the fact that Child was acting out sexually and sending nude photographs of herself. Following a hearing, the trial court found Child to be dependent but allowed her to remain in Mother's care. The trial court ordered Mother to immediately obtain a mental health evaluation and stable housing. Several months later, in January 2021, Mother made multiple suicidal comments and attempted to exit a moving vehicle with Child in the vehicle.

As a result, CYS filed a shelter care application. The trial court granted the application, and Child was placed with her maternal uncle and aunt. The trial court again informed Mother of the necessity to stabilize her mental health. However, Mother continued to struggle with her mental health and failed to consistently participate with mental health services. In October 2021, Mother ceased attending her mental health appointments, stating that they were not helping her. In contrast, Mother completed parenting classes and regularly participated in supervised visits. Nevertheless, Mother had a difficult time engaging with Child and applying the lessons from the classes to her

---

[2] It is well settled that the **Anders** principles have been extended "to appeals involving the termination of parental rights." **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014).

relationship with Child; and Mother was distracted by other matters, including her relationships with various men.

On January 7, 2022, the trial court entered an order changing the permanency goal from reunification to adoption. Subsequently, Child indicated that she did not want to participate in visits with Mother. CYS then filed a petition seeking the termination of Mother's parental rights. At the hearing on the petition, the trial court heard testimony from CYS caseworker Amanda Gregory; family resource specialist Mary Milford; and Mother. Significantly, Gregory testified that Child had alleged that when she was 8 years old, she had been sexually assaulted by a man who accompanied her and Mother on a camping trip; however, Mother demonstrated no concern about these allegations and took no steps to address the incident when it was reported to her. Ultimately, the trial court involuntarily terminated Mother's parental rights, finding that Child had been dependent for 18 months, and in kinship care with maternal uncle and aunt for 14 months, where she had been adjusting well and wished to remain.

After Attorney Bianco timely filed the instant appeal and a Pa.R.A.P. 1925(b) concise statement, she filed in this Court petition for leave to withdraw as counsel and a separate *Anders* Brief.

Attorney Bianco presents the following issues on Mother's behalf in the *Anders* Brief:

1. Whether the Trial Court erred or committed an abuse of discretion in terminating [Mother's] Parental Rights under 23 Pa.C.S.A. [§] 2511(a)(1)?

2. Whether the Trial Court erred or committed an abuse of discretion in terminating [Mother's] Parental Rights under 23 Pa.C.S.A. [§] 2511(a)(2)?

3. Whether the Trial Court erred or committed an abuse of discretion in terminating [Mother's] parental rights under 23 Pa.C.S.A. [§] 2511(a)(5)[?]

4. Whether the Trial Court erred or committed an abuse of discretion in terminating [Mother's] parental rights under 23 Pa.C.S.A. [§] 2511(b)[?]

*Anders* Brief at 5-6. Mother neither filed a *pro se* brief, nor retained alternate counsel for this appeal.

Before reviewing the merits of Mother's claims, we must first determine whether Attorney Bianco has complied with the dictates of *Anders* in petitioning to withdraw from representation. *See In re X.J.*, 105 A.3d at 3. Pursuant to *Anders*, when an attorney believes that an appeal is frivolous and wishes to withdraw as counsel, he or she must (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) provide a copy of the brief to the client and advise her of the right to proceed *pro se* or retain new counsel to raise any additional arguments worthy of the court's review. *See In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004). "With respect to the third requirement of *Anders*, that counsel inform the appellant of his or

her rights in light of counsel's withdrawal, this Court has held that counsel must attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citation and quotation marks omitted).

Additionally, a proper *Anders* brief must

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* (quoting *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009)). Once counsel has satisfied the above requirements, this Court "must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

Here, Attorney Bianco has complied with the requirements set forth in *Anders* by indicating that she made a conscientious review of the record and determined that Mother's appeal would be wholly frivolous. Further, the record contains a copy of the letter that Attorney Bianco sent to Mother, informing her of Attorney Bianco's intention to withdraw and advising her of her right to proceed *pro se*, retain counsel, and file additional claims. Finally, Attorney Bianco's *Anders* Brief meets the standards set forth in *Santiago*. Because Attorney Bianco has complied with the procedural requirements for withdrawing from representation, we will independently review the record to

determine whether Mother's appeal is, in fact, wholly frivolous. **See In re J.D.H.**, 171 A.3d at 908.

We review an appeal from the termination of parental rights with significant deference to the trial court's verdict:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. **See** 23 Pa.C.S.A. § 2511. The burden is upon CYS to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. **See In re D.A.T.**, 91 A.3d 197, 203 (Pa. Super. 2014). "Clear and convincing evidence is that which is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **Interest of A.M.**, 256 A.3d 1263, 1270 (Pa. Super. 2021) (citation and quotation marks omitted). Further, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. **See In re D.A.T.**, 91 A.3d at 203. "If competent evidence supports the trial court's findings, we will

affirm even if the record could also support the opposite result." ***In re M.M.***, 106 A.3d 114, 117 (Pa. Super. 2014) (citation omitted).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. ***See Interest of S.S.***, 252 A.3d 681, 686 (Pa. Super. 2021). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon sections 2511(a)(1) and (b), which state the following:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To terminate parental rights under Section 2511(a)(1), the party seeking termination must prove that the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (citations, quotation marks, and brackets omitted). Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re Adoption of B.G.S.*, 240 A.3d 658, 665 (Pa. Super. 2020) (citation omitted).

Mother contends that the trial court erred in granting the Petition to involuntarily terminate her parental rights to Child under Section 2511(a)(1). *See Anders* Brief at 12-14. Mother argues that she has not evidenced a settled purpose of relinquishing her parental claims to Child. *See id.* at 14.

In finding that Mother had shown an intent to relinquish her rights to Child, the trial court highlighted the low priority she gave to her relationship with Child:

> [Child] was removed from her Mother's care in January 2021 due to Mother's inability to maintain her mental health despite CYS establishing services for her and assisting her to meet her mental health needs. In March 2022, Mother was still demonstrating a lack of mental health stability. Over the pendency of this case, Mother did not consistently take her mental health medication or participate in mental health counseling. Of even greater concern was the general lack of care she demonstrated for the well-being of [Child]. She did not engage with [Child] during visits, she did not make choices in her own life that would allow her to establish a safe and appropriate home for [Child] in that she continued to invite various adult men to live with her or stay at her residence, knowing that [Child] had made allegations of being sexually assaulted by an adult male friend during a camping trip while in Mother's care. And Mother repeatedly allowed her relationship with men to overshadow her visit time with [Child]. While Mother was offered parenting classes and coaching to assist her with connecting with [Child] during visits, she was still unable to establish a relationship with [Child] or connect with her in any meaningful way. Mother has generally failed to demonstrate that she has the ability or the desire to provide love, comfort, security and stability for [Child].

Trial Court Opinion, 4/28/22, at 4-5 (unnumbered).

After a careful review of the record, we find that there is competent evidence in the record that supports the trial court's findings and credibility determinations. Indeed, Child was removed from Mother's home after Mother suffered multiple mental health crises in January 2021, including making multiple suicidal statements and attempting to exit a moving vehicle containing Child and her paramour at the time. **See** N.T., 3/1/22, at 7-8.

Furthermore, Mother was non-compliant with mental health services and would stop taking her medicine, without indicating her concerns to providers or CYS. *See id.* at 9-10, 66. Although Mother completed parenting classes, she could not apply what she learned to Child. *See id.* at 18, 41. Indeed, Mother made weekly supervised visits with Child, which never increased in frequency, and Mother did not make significant progress with Child during the visits. *See id.* at 18-19, 20-21, 43-44, 59, 74. Mother additionally admitted that she only called Child half the time when the opportunity arose. *See id.* at 20; *see also id.* at 21 (noting that there were no phone calls between Mother and Child after the goal change).

Mother indicated that she received notice of Child's medical and educational appointments but did not attend any of the appointments. *See id.* at 90. Moreover, CYS caseworker Gregory expressed concern with the fact that Mother had five separate relationships with men between August 2021 and January 2022. *See id.* at 15; *see also id.* at 58 (wherein Family Specialist Milford testified that Mother loses focus on reunifying with Child when she is in a relationship with a man). CYS caseworker Gregory additionally testified that Child stated that one of Mother's paramours had sexually abused her when she was 8 years old during a camping trip and that Mother did not do anything to stop the abuse. *See id.* at 22-25.

In light of the foregoing, the trial court did not err in finding that Mother did not perform her parental duties. *See In re Adoption of B.G.S.*, 240 A.3d

at 665 (stating that a parent does not perform "her parental duties by displaying a merely passive interest in the development of a child."). Therefore, we find no reason to disturb the trial court's conclusions or its discretion in terminating Mother's parental rights to Child under section 2511(a)(1).

Having determined termination is appropriate pursuant to Section 2511(a)(1), we next review whether the requirements of Section 2511(b) are satisfied. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Under section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See Interest of L.W.*, 267 A.3d 517, 523 (Pa. Super. 2021); *see also In re Z.P.*, 994 A.2d at 1121 (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."). "[C]ourts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) (citation

omitted). In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. ***See Interest of L.W.***, 267 A.3d at 523. Finally, although the focus in terminating parental rights under section 2511(a) is on the parent, it is on the child under section 2511(b). ***See In re C.L.G.***, 956 A.2d at 1008.

Mother contends that the trial court erred in determining that termination served Child's best interests under section 2511(b). ***See Anders*** Brief at 17. Mother argues that she demonstrated a bond with Child. ***See id.*** at 18.

Here, upon removal from Mother's care, Child was placed with her maternal uncle and aunt. ***See*** N.T., 3/1/22, at 29-30. CYS caseworker Gregory testified that Child has been doing well in her new home environment, she has been in therapy, and she was regularly attending school and performing well at school. ***See id.*** at 30-32; ***see also id.*** at 33, 43, 44 (noting that Child stated that her relationship with Mother triggers behavioral issues and that talking to Mother did not make her feel safe). Further, Gregory testified that Child expressed that she wanted to be adopted by her uncle and aunt, and that she does not want contact with Mother. ***See id.*** at 33-34. Gregory indicated that terminating Mother's parental rights was appropriate due to Child's progress with her uncle and aunt. ***See id.*** at 34.

Family Resource Specialist Milford testified that Mother struggled to bond with Child during visits. ***See id.*** at 59. Mother would express that she

loved Child at the end of visits, and they would hug. ***See id.*** at 63-64. However, Mother also admitted that she did not attend to Child's medical or educational appointments. ***See id.*** at 70.

The trial court determined that termination of Mother's parental rights best served Child's needs and welfare, explaining that Child was in loving and stable home where her needs are being met. ***See*** Trial Court Opinion, 4/28/22, at 5 (unnumbered). The trial court's determination that Child's best interests are served by the termination of Mother's parental rights is supported by competent, clear, and convincing evidence in the record. ***See In re K.Z.S.***, 946 A.2d 753, 763-64 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests); ***see also In re Z.P.***, 994 A.2d at 1125 (stating that, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."). Therefore, we conclude that the trial court did not abuse its discretion in terminating the parental rights of Mother under section 2511(b).

Moreover, as we cannot find any additional meritorious issues in the record, and we agree with Attorney Bianco that Mother's appeal is frivolous, we grant her petition for leave to withdraw from representation.

Order affirmed. Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/21/2022