J-S36016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF C.G.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.M.D., MOTHER | : : : : : : : | |
| | : | No. 338 WDA 2025 |

Appeal from the Decree Entered February 21, 2025
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s): 45-ADOPT-2024

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: April 29, 2026**

C.M.D. (Mother) appeals from the decree involuntarily terminating her parental rights to C.G.S. (Child).[1] Mother's counsel, Tyler Schultz, Esq. (Counsel) has filed an amended application for leave to withdraw and an ***Anders***/***Santiago***[2] brief.[3] After review, we grant Counsel's application to withdraw and affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child was aged one year and ten months at the time of entry of the decree on February 21, 2025. **See** Trial Ct. Op., 6/2/25, at 1.

[2] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009); **see also In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending ***Anders*** to appeals involving the termination of parental rights).

[3] Counsel filed an application for leave to withdraw on August 15, 2025. **See** Appl. to Withdraw, 8/15/24. On December 31, 2025, this Court directed
*(Footnote Continued Next Page)*

Briefly, Child was born prematurely in April of 2023 and tested "positive for illicit substances" at birth. *See* N.T., 2/14/25, at 35, 71. Due to the circumstances of Child's birth, illicit substance use by Child's parents, and that Child had an older sibling, R.S., to whom parental rights had previously been terminated, Fayette County Children and Youth Services (the Agency) obtained a shelter care order and placed Child in kinship foster care within the same household where R.S. resided. *See* Trial Ct. Op., 6/2/25, at 1, 3; *see also* N.T., 2/14/25, at 36, 69-70. Child was adjudicated dependent on May 25, 2023 and remained in the same kinship foster care placement throughout these proceedings. *See* Trial Ct. Op., 6/2/25, at 3; N.T., 2/14/25, at 36-38.

On July 2, 2024, the Agency filed a petition to involuntarily terminate Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8) of the Adoption Act. *See* DHS' Pet., 7/2/24. The trial court held a termination of parental rights (TPR) hearing on February 14, 2025, when Child was one year and ten months old.[4] At the TPR hearing, the Agency presented evidence

---

Counsel to send a new advisal letter to Mother prior to submitting an amended petition to withdraw. *See* Mem., 12/31/25. Counsel filed an amended petition on January 13, 2026. *See* Am. Appl. to Withdraw, 1/13/26.

[4] At the TPR hearing, Child was described as minimally verbal. *See* N.T., 2/14/25, at 15-16. The trial court had appointed Wendy O'Brien, Esq., "to represent the interests of [Child]." *See* Trial Ct. Order, 7/9/24. At the TPR hearing, Ms. O'Brien was identified as the guardian *ad litem* (GAL) for Child. *See* N.T., 2/14/25, at 4.

We note that trial courts must "appoint counsel to represent the child in an involuntary TPR proceeding." 23 Pa.C.S. § 2313(a). "[W]here [a trial] court
*(Footnote Continued Next Page)*

establishing that Mother's reunification goals were to cooperate with the Agency and all providers, complete drug and alcohol treatment and mental health treatment, complete parenting classes, obtain appropriate housing, and form a bond with Child. **See** Trial Ct. Op., 6/2/25, at 3. The Agency presented evidence that Mother had no contact with Child from November of 2023 to September of 2024. **See id.** at 1. Justice Works Youth Care program director Laura Daumit testified that there was affection between Child and Mother and that during Mother's supervised visitations with Child that Mother behaved appropriately toward Child. **See id.** at 14-15.

_____

has appointed a GAL/Counsel to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* whether the [trial] court made a determination that those interests did not conflict," as "a single attorney cannot represent a child's best and legal interest if those interests conflict." **In re K.M.G.**, 240 A.3d 1218, 1235-36 (Pa. 2020) (citing **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018)). An attorney serving as GAL "representing a child's best interests can properly fulfill the role of Section 2313(a) counsel where . . . the child . . . is too young to be able to express a preference as to the outcome of the proceedings." **T.S.**, 192 A.3d 1092. In other words, for a "child [who] is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests" and, accordingly, Section 2313(a)'s mandate "is satisfied where the court has appointed [a GAL] who represents the child's best interests during such proceedings." **Id.** at 1092-93.

Although it is unclear from the record whether Attorney O'Brien served as both GAL and Section 2313(a) counsel or whether the trial court determined that there was no conflict between Child's best and legal interests, we apply the **T.S.** presumption that Child's preferred outcome in the TPR proceedings could not be ascertained due to Child's very young age and minimal verbal ability. **See T.S.**, 192 A.3d at 1092-93. Therefore, we conclude that Section 2313(a)'s mandate was satisfied in the proceedings below. **See** 23 Pa.C.S. § 2313(a); **K.M.G.**, 240 A.3d at 1235-36; **T.S.**, 192 A.3d at 1092-93.

At the time of Child's birth, Mother had been "actively using drugs." *See* Trial Ct. Op., 6/2/25, at 3, 6. After Child's removal from Mother's custody, Mother did not consistently participate in drug testing and the tests that she did submit to were variously positive for the drugs buprenorphine, cocaine, fentanyl, and levorphanol. *See id.* 2. When asked about her relationship with illicit drugs, Mother testified at the TPR hearing that she was in the process of "fixing my drug" problem, that she used fentanyl, and that she had been "clean for eight months." *Id.* at 129, 136.

At the TPR hearing, Mother conceded that she did not have permanent housing. *See id.* at 131-36. At the time of filing of the TPR petition, Mother was residing in a rehabilitation facility and was discharged in August of 2024, at which time she moved into a halfway house. *See* Trial Ct. Op., 6/2/25, at 5. At the time of the TPR hearing, Mother was residing with Child's father in a rented home that had been inspected by Danielle Thomas, an Agency caseworker, on February 5, 2025. *Id.* at 5; *see also* N.T., 2/14/25, at 82. Ms. Thomas testified that the home was acceptable in terms of cleanliness but sparsely furnished, and noted that Child's room contained only an air mattress, one outfit, and two toys. *See* Trial Ct. Op., 6/2/25, at 5; *see also* N.T., 2/14/25, at 50, 82-83.

Ms. Thomas also testified that Child required occupational therapy, special instruction therapy, and wrap-around services. *See* N.T., 2/14/25, at 90-94.

On February 21, 2025, the trial court entered a decree involuntarily terminating Mother's parental rights. *See* Trial Ct. Order, 2/21/25. Mother timely filed a notice of appeal and a simultaneous concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court complied with Rule 1925(a).

On appeal, Counsel filed an amended application for leave to withdraw and an *Anders*/*Santiago* brief that identifies the following issue: "Did the trial court err when it terminated the parental rights of [Mother] pursuant to the Adoption Act and specifically 23 Pa.C.S. § 2511?" *Anders*/*Santiago* Am. Brief at 7 (some formatting altered).

Where counsel has filed an *Anders*/*Santiago* brief, this Court must examine counsel's request to withdraw before reviewing the merits of any possible underlying issues. *See In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). As this Court has stated:

> To withdraw pursuant to *Anders*, counsel must:
>
> > 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations and quotation marks omitted); *see also X.J.*, 105 A.3d at 4 (explaining that under *Anders*, counsel must send their client a letter which advises the client of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief" (citations omitted and some formatting altered)); *In re X.S.*, 555 EDA 2020, 2020 WL 4386767, at *2 (Pa. Super. filed July 31, 2020) (unpublished mem.) (striking counsel's *Anders* brief and ordering counsel to send a new letter to the mother where counsel's letter failed to inform the mother of her right to raise any additional points she deemed worthy of this Court's attention).[5]

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Santiago*:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*X.J.*, 105 A.3d at 3-4 (citation omitted).

---

[5] *See* Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Here, Counsel has complied with the procedural requirements by filing a petition to withdraw, sending Mother a letter explaining her appellate rights, informing Mother of her right to obtain new counsel or proceed *pro se* to raise any additional arguments before this Court, and supplying Mother with a copy of the ***Anders***/***Santiago*** brief. ***See id.*** Moreover, Counsel's ***Anders***/***Santiago*** brief complies with the requirements of ***Santiago*** because it includes a summary of the relevant facts and procedural history, refers to portions of the record that might arguably support Mother's claims, and sets forth the conclusion that the appeal is frivolous. ***See Santiago***, 978 A.2d at 361. Accordingly, Counsel has met the technical requirements of ***Anders*** and ***Santiago*** and we will proceed to address the issues identified in Counsel's ***Anders***/***Santiago*** brief.

Our standard of review of decrees terminating parental rights is as follows:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree . . . is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial

courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, . . . the moving party [must] establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations omitted and some formatting altered).

Section 2511 of the Adoption Act[6] sets forth eleven grounds for the involuntary termination of parental rights; therein, Section 2511(a)(1) states:

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). Section 2511(a)(1) requires a petitioner to establish that a parent exhibited "a settled purpose of relinquishing a parental claim" or "a refusal or failure to perform parental duties," that is, it does not require that both circumstances be established. *Adoption of C.M.*, 255 A.3d 343, 364 n.12 (Pa. 2021) (citation omitted). Our Supreme Court in *C.M.* described

---

[6] *See* 23 Pa.C.S. §§ 2101-2938.

'parental duty' as "a positive duty requiring affirmative performance," that is, a parent must

> exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship, or [her] rights may be forfeited. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* at 364 (citations omitted and some formatting altered).

> Further, when

> evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a balancing or best interest approach. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then must assess the petition under § 2511(b), which focuses on the child's needs and welfare.

*Id.* at 830 (citations omitted and some formatting altered); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that, if "the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child" (citation omitted and formatting altered)). We need only agree with the trial court as to any one ground under Section 2511(a), as well as Section 2511(b), to affirm a decree terminating parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Section 2511(b) provides:

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) . . . , the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

To assess the needs and welfare of a child pursuant to Section 2511(b), this Court has explained that, in addition to examining any bond between child and parent,

the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)), *abrogated in part on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023).

Here, the trial court found that the Agency established grounds to terminate Mother's parental rights pursuant to Sections 2511(a)(1), (a)(2), (a)(5), and (a)(8). *See* Trial Ct. Op., 6/2/25, at 9.

Following our review of the record, we discern no error of law or abuse of discretion by the trial court in concluding that the Agency established

- 10 -

sufficient grounds for termination under Section 2511(a)(1), *i.e.,* that Mother had "failed to perform parental duties" for Child "for a period of at least six months immediately preceding the filing of the [TPR] petition." **See** 23 Pa.C.S. § 2511(a)(1); **see also M.E.**, 283 A.3d at 829-30; **see** Trial Ct. Op., 6/2/25, at 8.

As noted, Mother had no contact with Child for approximately ten months, from November of 2023 to September of 2024, which included the six-month period prior to the filing of the TPR petition. **See id.** at 1; **see also** 23 Pa.C.S. § 2511(a)(1).[7] During the relevant six-month period, Mother performed no parental duties for Child, nor did she demonstrate "reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." **C.M.**, 255 A.3d at 364. Accordingly, the trial court acted within its discretion in concluding that the Agency established by clear and convincing evidence that Mother's efforts to address her drug addiction, establish a stable environment for herself, and re-establish contact with Child were insufficient to prevent termination under Section 2511(a)(1). **See M.E.**, 283 A.3d at 829-30.

The trial court also acted within its discretion in concluding that termination best served Child's needs and welfare pursuant to Section

---

[7] While the record reflects that Mother re-established contact with Child and re-committed to more routine drug-testing **after** the Agency filed the TPR petition, under Section 2511(a)(1) the trial court was limited to considering Mother's conduct **before** the petition was filed. **See** Trial Ct. Op., 6/2/25, at 2-4 (stating "Mother [was] uncooperative for ten months . . . [and] has been cooperative since September of 2024"), 6; **see also** 23 Pa.C.S. § 2511(a)(1).

2511(b). *See* Trial Ct. Op., 6/2/25, at 9; *see also M.E.*, 283 A.3d at 829-30. As noted, Child has lived with her foster parents since birth and has never lived with Mother. *See id.* at 3. Child requires occupational therapy, special instruction therapy, and wrap-around services. *Id.* at 3; N.T., 2/14/25, at 90-94. While the record reflects that Mother behaved appropriately toward Child under the conditions of supervised visitation and that there was affection between Mother and Child, these factors do not require us to disturb the trial court's conclusion that Child's needs and welfare were best served by termination of Mother's parental rights. *See N.A.M.*, 33 A.3d at 103; *In re K.Z.S.*, 946 A.2d at 763 (affirming the involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests).

Further, following our independent review of the record, we conclude that Mother's appeal is frivolous and that Counsel has not overlooked any additional, non-frivolous issues. Therefore, we grant Counsel's petition to withdraw and affirm the decree involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). *See J.D.H.*, 171 A.3d at 910 (stating that where an independent review of the record does not reveal any non-frivolous issues overlooked by counsel, this Court may grant the petition to withdraw and affirm the order below).

Decree affirmed. Counsel's petition to withdraw is granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>4/29/2026</u>